IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STANLEY CURTIS SMITH, ) | |
| ) | |
| Plaintiff, ) | 4:04cv3170 |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| DOUGLAS COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the following pending motions: (1) filing no. 73, the Motion for Summary Judgment by defendants-Douglas County Correctional Center ("DCCC") and Patricia Ryan; (2) filing no. 86, the Motion to Extend Progression Order Deadlines by defendants-Dr. Gensler and Rhonda Moore; (3) filing no. 88, the Motion to Dismiss by Douglas County and Patricia Ryan; (4) filing no. 91, the Request for Production of Documents by the plaintiff, Stanley Curtis Smith; (5) filing no. 95, the plaintiff's Motion to Compel Discovery; (6) filing no. 96, the plaintiff's Motion to Appear by Telephone; (7) filing no. 97, the plaintiff's Motion to Summons Juanita Brown RN; and (8) filing no. 103, the plaintiff's Motion to Compel Discovery.  The plaintiff, a state prisoner who was a pretrial detainee at the DCCC when the events described in the complaint occurred, alleges deliberate indifference to his medical needs while in DCCC custody, in violation of the Eighth Amendment to the United States Constitution.

The plaintiff alleges that he had a diagnosis of paranoid schizophrenia for over four years when he arrived at DCCC, as he advised the medical personnel and corrections staff there, but the medical providers at DCCC denied him the prescribed medication for his psychiatric condition.  They also failed to review his previous medical records and refused to confer with his treating physician.  As I have previously stated, the plaintiff claims more than a mere difference of opinion regarding treatment.  Instead, he claims that DCCC health care personnel refused to treat him *at all* for his diagnosed psychosis, and that he suffered terribly as a result.  Before his confinement at DCCC, and later, upon his transfer to state custody, the plaintiff received treatment.  However, the plaintiff contends that during

1

his time at DCCC, the health care staff belittled his condition, refused to contact his psychiatrist for records or information, told the plaintiff that he just wanted medications to cope with incarceration, and otherwise ignored and failed to treat the plaintiff's serious medical needs.

However, the plaintiff has a problem under the Prison Litigation Reform Act ("PLRA"). In my Memorandum and Order of November 15, 2005 (filing no. 82), I directed the plaintiff to file a Third Amended Complaint, and I emphasized the necessity of establishing that he exhausted his administrative remedies. See filing no. 82 at 3:

> However, in his Third Amended Complaint, the plaintiff **must** state whether or not he filed grievances at DCCC regarding the claims he asserts in this litigation, and if not, why not. As a prisoner, the plaintiff is subject to the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a) of the PLRA requires exhaustion of administrative remedies before a prisoner files suit in federal court about conditions or events in prison. 42 U.S.C. § 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) means that if grievance procedures were available to the plaintiff at the DCCC, and the plaintiff did not complete the available grievance procedures before filing his lawsuit, the plaintiff's claims may be subject to dismissal without prejudice. Inmate interview requests ("kites") are not considered grievances.

See also filing no. 82 at 5:

> [T]he plaintiff shall list all defendants in the caption of the Third Amended Complaint, and he **must** state whether or not he filed grievances at DCCC regarding the claims he asserts in this litigation, and if not, why not ....

The plaintiff entered the DCCC on October 11, 2003. He filed an initial grievance on November 19, 2003 (Exh. to filing no. 87). He received a response from Patricia Ryan, Contract Administrator, dated November 20, 2003 (attachment 3 to filing no. 87) denying his grievance of November 19, 2003. The plaintiff filed inmate interview requests ("kites"), but those do not constitute grievances or appeals. On November 26, 2003, Juanita Brown, RN responded to a kite dated November 21, 2003 (Exhs. to filing no. 87). The record clearly demonstrates that the defendants knew the substance of the plaintiff's claim. However, the plaintiff never appealed the denial of his initial grievance.

Sections 11.1, *et seq.* of the DCCC *Inmate Rules and Regulations Handbook* (see

Exhs. to filing no. 75) establish a two-step exhaustion procedure. After the initial formal grievance contemplated by section 11.2.A of the Handbook ("Step One grievance"), an investigation ensues and a written response or decision usually follows within ten working days of receipt of the grievance. Id. § 11.1(E). In the absence of a favorable response, the second, and final, step of the process is an appeal to the Chief Deputy of Corrections, as set forth in section 11.2.C of the *Handbook*. Thereafter, if the inmate disagrees with the Chief Deputy's disposition of the appeal, section 11.2.D of the *Handbook* authorizes the inmate to pursue other remedies outside the facility such as action in court.

The language of section 11.2.C of the *Handbook* is permissive, i.e., an inmate "may" file an appeal to the Chief Deputy. Nevertheless, the appeal to the Chief Deputy was, and is, "available" as an integral component of the exhaustion procedure. Under the PLRA, a prisoner must *complete* the available exhaustion process. Booth v. Churner, 532 U.S. 731, 734-35 (2001).

In this case, the Chief Deputy did not have an opportunity to render a decision. The plaintiff does not contend that he filed an appeal to the Chief Deputy from the decision regarding the plaintiff's Step One grievance. Instead, the plaintiff states that he could not file an appeal because he left DCCC for state custody shortly after the November 20, 2003 denial of his Step One grievance. The plaintiff does not state precisely when he transferred from the DCCC to state custody.

On the other hand, on page 7 of his Third Amended Complaint (filing no. 87), the plaintiff complains that from "October to January the defendants at (DCCC) continued to refuse meds for plaintiff's mental condition ...." Therefore, the plaintiff must have remained at the DCCC through at least some part of January 2004. Thus, he had the entire month of December 2003 and some part of January 2004 in which he could have filed a Step Two grievance, appealing the denial of his Step One grievance.

The court has no choice. Dismissal is required when an inmate has not exhausted administrative remedies as to all claims before filing a lawsuit. Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory"); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (exhaustion is mandatory).

See also Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005): "The [PLRA] requires immediate dismissal of all claims brought by inmates with respect to prison conditions by inmates under 42 U.S.C. § 1983 or any other federal law until 'such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a)."[1]

THEREFORE, IT IS ORDERED:

1. That filing no. 73, the Motion for Summary Judgment by defendants-Douglas County Correctional Center ("DCCC") and Patricia Ryan, and filing no. 88, the Motion to Dismiss by Douglas County and Patricia Ryan, are granted insofar as those motions are consistent with this Memorandum and Order;

2. That the plaintiff's complaint, as amended, and this action must be dismissed, without prejudice, as to all defendants, for the plaintiff's failure to complete exhaustion of administrative remedies in compliance with the Prison Litigation Reform Act;

3. That filing no. 86, the Motion to Extend Progression Order Deadlines by defendants-Dr. Gensler and Rhonda Moore; filing no. 91, the plaintiff's Request for Production of Documents; filing no. 95, the plaintiff's Motion to Compel Discovery; filing no. 96, the plaintiff's Motion to Appear by Telephone; filing no. 97, the plaintiff's Motion to Summons Juanita Brown RN; and filing no. 103, the plaintiff's Motion to Compel Discovery, are denied as moot; and

4. That a separate judgment will be entered accordingly.

May 30, 2006.    BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge

---

[1] However, a dismissal pursuant to 42 U.S.C. § 1997e(a) is without prejudice. Castano v. Nebraska Dept. of Corrections, 201 F.3d 1023, 1025 (8th Cir.), cert. denied, 531 U.S. 913 (2000). Accord Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001). The plaintiff is free to start over and file a new lawsuit. He may attempt to exhaust by mail whatever administrative remedies DCCC is willing to make "available" to him, as only "available" remedies must be exhausted. However, this case will not be reopened.